IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

| | |
|---|---|
| TRUE THE VOTE, INC. in its individual, corporate capacity, and PAMELA WOHLSCHLEGEL, | ) ) ) ) |
| *Plaintiffs*, | ) Civil Action No. 2:13cv14046 |
| v. | ) ) ) |
| GERTRUDE WALKER, St. Lucie County Supervisor of Elections, in her official capacity, | ) ) ) |
| *Defendant*. | ) ) |

## **COMPLAINT**

Plaintiffs, by their attorneys, bring to enforce federal public inspection rights under Section 8 of the National Voter Registration Act of 1993 ("NVRA") (Pub. L. 103–31, § 8), 42 U.S.C. § 1973gg-6(i)(1), records retention requirements of 42 U.S.C. § 1974, and, state public information rights under Article I, section 24 of the Florida Constitution, and chapter 119, F.S.

1. Plaintiffs seek declaratory and injunctive relief to compel Defendant's compliance with Section 8 of the NVRA. Specifically, Defendant has violated 42 U.S.C. § 1973gg-6(i)(1) by failing to permit the inspection of election records relating to the 2012 Federal general election for Florida's 18th Congressional District, as required by Section 8. Plaintiffs thus seek a declaration and an injunction requiring Defendant to permit plaintiffs to publicly inspect and examine all voter registration and election records as described in this complaint.

2. Plaintiffs seek declaratory and injunctive relief to compel Defendant's compliance with 42 U.S.C. § 1974 and preserve all election records, in whatever form, relating to the 2012 Federal general election for Florida's 18th Congressional District.

1

3.     Plaintiffs seek declaratory and injunctive relief to compel the Defendant to produce and make available public election information and records relating to the 2012 Federal general election for Florida's 18th Congressional District under Article I, section 24 of the Florida Constitution, and chapter 119, F.S.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States, and under 42 U.S.C. § 1973gg-9(b)(2), as the action seeks injunctive and declaratory relief under the NVRA.

5.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. 1974d.

6.     This Court has pendent jurisdiction to hear claims brought under Article I, section 24 of the Florida Constitution, and chapter 119, F.S.

7.     Venue in this Court is proper under 28 U.S.C. § 1391(b), because all of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

8.     Plaintiff True the Vote is a non-profit organization that seeks to restore transparency, truth, faith, and integrity to local, state, and federal elections. Plaintiff True the Vote brings this action in its individual, corporate capacity only.

9.     Plaintiff Pamela Wohlschlegel is a registered voter in the 18th Congressional District of Florida. Plaintiff cast a ballot for her member of Congress in the 18th Congressional District of Florida.

10.     Defendant Gertrude Walker is the Supervisor of Elections in St. Lucie County.  In that capacity, she is both the custodian of records sought by the plaintiffs to be preserved and inspected, as well as the administrator of elections in St. Lucie County.  Defendant administered the general election in St. Lucie County for the 18th Congressional District in 2012.

## FACTUAL BACKGROUND

11.     Under Section 8 of the NVRA, election officials "shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 42 U.S.C. § 1973gg-6(i)(1).  Among those records that must be maintained and made available are records of notices sent to inactive voters and responses. 42 U.S.C. § 1973gg-6(i)(2).

12.     The administration of the 2012 federal general election for the 18th Congressional District was marred by controversy, ambiguities, uncertainty and inconsistent tabulations.

13.     Allen West, Republican candidate for the 18th Congressional District maintained a small but steady lead on the night of November 6, 2012. Shortly after midnight, a batch of early votes from St. Lucie County was tallied, giving Democratic candidate Patrick Murphy the lead by more than 2,000 votes. When pressed about the late tallied batch of early votes, Defendant Walker noted that the tabulating machines had been unable to read the electronic memory cartridges containing the ballot counts from early voting sites, forcing poll workers to manually feed the paper ballots through scanners at the elections office later than planned. The sudden and unanticipated lead change late in the evening, coupled with the Supervisor's admission that there had been a machine failure, created concern that some of the early vote ballots in St. Lucie County had been counted twice.

14. On Thursday, November 8, 2012, candidate West publicly demanded a full hand recount of all early ballots in the race, and formally requested to view the sign-in books from the polls to ensure that the number of voters matched the ballot count. Candidate West never received a response to this request.

15. On Friday, November 9, 2012, candidate West asked a Florida state court to impound ballots and voting machines. Candidate West brought no federal claims under 42 U.S.C. 1974 or the NVRA. The Florida court found that the request, based wholly only on state law, was "entirely premature" given that official results had not been determined, and that unofficial results were not due until November 10.

16. On Saturday, November 10, 2012, the vote count for the 18th Congressional District was "unofficially certified." St. Lucie County's Elections Canvassing Board ("Canvassing Board") publicly acknowledged "uncertainty" about the early vote totals and issued a public notice calling an emergency meeting to "recount all ballots cast during early voting," 37,379 ballots in total, on Sunday, Nov. 11, 2012.

17. Despite issuing a public notice stating that they would recount all early ballots, the Canvassing Board conducted only a partial "retabulation" of early votes cast from November 1 through November 3. Only 16,275 early ballots were counted, or 43.5% of all early votes. The Assistant County Attorney for St. Lucie County stated that the cartridge problem was limited to only the last 3 days of early voting, and thus a full retabulation of all early votes was unnecessary. Both the Republican and Democratic Party candidates in the 18th Congressional District contest objected to the partial retabulation. After the partial retabulation, the lead for the Democratic candidate decreased.

18.     At a November 13, 2012, press conference held by the Defendant Walker, the Defendant admitted that agents and employees working for the Defendant had acted with "haste" to get results out to the public, and that "mistakes were made."  The Florida Division of Elections announced that it was sending three employees, including the bureau chief from the Bureau of Voting Systems Certifications, to St. Lucie County to access the tabulation process and determine how 799 votes disappeared or changed hands during the November 11 retabulation of the votes.

19.     On November 16, 2012, the Republican candidate West asked a Florida court to enjoin St. Lucie County from certifying its results because all early votes were not retabulated. Again, no federal claims were made by candidate West in this request.  The state court denied the request, finding that he lacked the authority under state law to order a recount of all early votes.  Thus, the decision rested with the St. Lucie County Canvassing Board.

20.      On November 16, 2012, the Defendant announced that she had found an additional 306 early voting ballots in a box in her office that had never been counted.  The same day, the Canvassing Board announced they would commence a retabulation of all early votes.

21.     Also on November 16, 2012, the Defendant was admitted to the hospital. The Defendant did not participate in the process from this point forward, and her administrative assistant took over as acting Supervisor of Elections for St. Lucie County.

22.     On Saturday, November 17, 2012, the St. Lucie Canvassing Board began its retabulation of all early votes in the 18th Congressional District.  Problems and uncertainty continued to plague the process.  Transparency and haste were but two problems.   The physical space that the Canvassing Board utilized for retabulation was owned by a local citizen who demanded that the Canvassing Board vacate the property by 10:30 p.m. on November 17. The retabulation was far

from complete at this time, but the Canvassing Board was forced to adjourn for the evening and set 8:00 a.m. Sunday morning as the time to reconvene. The deadline for counties to certify election results to the Secretary of State was noon on November 18, 2012. But at 11 a.m. on November 18, memory cards and data had yet to be uploaded to the Secretary of State. At 11:51 a.m., an attorney assisting the Defendant asked attorneys for the Democrat and Republican candidates in the 18th Congressional District what the campaigns planned to do if the county failed to meet the deadline. The Defendant could not confirm that they would in fact fail to meet the deadline, but wanted to know what the campaigns planned to do if the deadline was missed.

23. When the noon deadline came and passed on November 18, 2012, Defendant's employees became frantic, and moved the process to a back room, out of the sight of the candidate observers and the public. No observers were permitted at any point while the data was being uploaded. While the candidates assumed that the deadline had been missed, no confirmation was given.

24. Approximately at 2:00 p.m. on November 18, 2012, the attorney for the Defendant asked attorneys for both Republican and Democratic congressional candidates if they would consider giving the Defendant the vote totals the campaigns had calculated. The attorney stated that the Defendant wanted to see if Defendant's numbers matched the numbers the campaigns had calculated. The campaigns declined to give her their numbers, and the Canvassing Board came forward to announce the results not ten minutes later.

25. Finally, because the Defendant missed the certification deadline of noon on November 18, 2012, the Florida Secretary of State was required to use the earlier, inaccurate preliminary tabulations showing that overall, the Democratic Party candidate received 166.257 votes and the Republican Party candidate received 164,353 in the entire 18th Congressional District.

26.     The Plaintiffs, concerned about accuracy and transparency in the conduct of the 2012 federal general election, made numerous requests to the Defendant to physically inspect a variety of election records pursuant to federal law (particular records detailed, *infra*). The Plaintiffs also provided the Defendant notice that if an inspection was not forthcoming, that Plaintiffs would bring an action under Section 8 of the NVRA. Defendant never responded that Plaintiffs may inspect the requested election records. Plaintiffs were never allowed to conduct a physical inspection of election records.

27.     The Plaintiffs sought the following records, and herein seek declaratory and injunctive relief granting the Plaintiffs a right to physically inspect these records and capture or copy data contained therein, pursuant to rights contained in Section 8 of the NVRA and Article I, section 24 of the Florida Constitution, and chapter 119, F.S. These records are:

(a)     "Voter Credit" records of all voters who voted in the 2012 federal general election, including the precinct where they voted.

(b)     Federal or Florida registration forms of all people who voted in the 2012 federal general election.

(c)     Federal or Florida registration forms of everyone who registered to vote with Defendant after January 1, 2012.

(d)     All "opti-scan" paper ballots allowing for a third party to retabulate the election results.

(e)     List maintenance notices sent to inactive voters as required by Section 8 of NVRA.

(f)     List maintenance responses from notices sent to inactive voters.

(g)     List maintenance purge lists of purged voters prior to the 2012 federal general election.

(h)     Copies of the "felon files" maintained by Defendant, both from state officials and the U.S. Attorney.  (Felon files are notices received of convictions and data relating to actions taken).

(i)     Notices sent to potential ineligible felon voters and any responses from potential felons in response to any communication from Defendant.

(j)     Lists of potential of noncitizens registered to vote received from the Florida Secretary of State in 2012.

(k)     2012 emails to Defendant from the Florida Secretary of State regarding potential noncitizens registered to vote in St. Lucie County.

(l)     Letters from the Defendant to those identified by the Florida Secretary of State as potential non-citizen voters in 2012, and all records regarding the same.

(m)     The second revised list of potential noncitizens received from the Florida Secretary of State in 2012.

(n)     Letters from the Defendant to those identified by the second list from the Florida Secretary of State as potential non-citizen voters, and all records regarding the same.

(o)     List of individuals removed from rolls based on notices from Clerk of Court regarding those called for jury duty but escaping because of professed non-citizen status.

(p)     All public notices from the Defendant regarding tabulations, canvassing and certifications relating to the 18th Congressional District contest in the 2012 federal general election.

(q)     Notices of any trainings sessions for the individuals that worked the partial and full retabulation of ballots for the 18th Congressional District in the 2012 federal general election.

(r)     Tabulation sheets or data showing number of early votes for each candidate in the 18th Congressional District in the 2012 federal general election *before* the *partial* retabulation.

(s)     Tabulation sheets or data showing number of early votes for each candidate in the 18th Congressional District in the 2012 federal general election *before* the *full* retabulation.

(t)     All provisional ballots cast and provisional ballot envelopes cast in the 18th Congressional District in the 2012 federal general election.

(u)     All notices or letters sent to voters who cast provisional ballots cast in the 18th Congressional District in the 2012 federal general election.

## PLAINTIFF TRUE THE VOTE

28. As an integral part of its public interest mission, Plaintiff True the Vote regularly utilizes open records laws and other laws requiring that election records be made available to the public. After Plaintiff True the Vote obtains the records it has requested, it analyzes them and disseminates its findings to the public through various educational and outreach programs, including its website, blog, and email newsletter.

29. Plaintiff True the Vote also obtains and examines official lists of eligible voters and other election data from states, counties, and localities across the United States, including the State of Florida, to carry out its various programs including election integrity and transparency.

30. Plaintiff True the Vote has recruited and trained volunteers and members in Florida to analyze and verify the accuracy and currency of official lists of eligible voters and other voter registration data, as well as to ensure that state and federal laws pertaining to elections are being followed by election officials in Florida.

31.     Defendant has injured and continues to cause injury to members and volunteers of Plaintiff True the Vote who are registered to vote in the State of Florida because it is undermining their confidence in the integrity of the electoral process and the effectiveness of their vote, particularly in the 2012 general election for the 18th Congressional District.

32.     Defendant's violation of the NVRA and state laws has impaired and will impair Plaintiff True the Vote from carrying out its public interest mission.  Refusal to permit inspection of election records in accordance with the NVRA and various state laws impairs True the Vote's mission of election integrity and transparency.

33.     Plaintiff True the Vote has suffered an informational injury under NVRA and has standing.  *See, Judicial Watch, et al. v. J. Bradley King, et al.*, Case No. 1:12-cv-800-WTL-TAB, (S.D. Ind. 2012) (Plaintiff True the Vote suffered informational injury under Section 8 of NVRA).  *See also, Project Vote/Voting for America, Inc. v. Long,* 682 F. 3d 331, 334-35 (4th Cir. 2012) (NVRA contains right to on-premises physical inspection of election records).

34.     It is unlikely that any individual member or volunteer of True the Vote would have the ability or the resources to take action to protect their individual interests or redress the injury absent collective action by Plaintiff True the Vote.

35.     Defendant's violation of federal and state public access to information laws has thus injured Plaintiff True the Vote by impairing its ability to carry out is public interest mission.

## **PLAINTIFF PAMELA WOHLSCHLEGEL**

36.     Plaintiff Pamela Wohlschlegel is a registered voter in the 18th Congressional District of Florida.  She cast a ballot in the 2012 federal general election, and voted for a candidate in the 18th Congressional District contest.

37. Plaintiff Wohlschlegel is an active volunteer dedicated to transparency and integrity of elections in Florida, including the 18th Congressional District.

38. Plaintiff Wohlschlegel has suffered an informational injury under NVRA and Article I, section 24 of the Florida Constitution, and chapter 119, F.S. and therefore has standing.

39. Plaintiff Wohlschlegel has suffered an injury to her right to have a transparent election for the 18th Congressional District and her right not to have her vote diluted by any ineligible or mis-tabulated voter or votes.

## COUNT I

**(Violation of the NVRA: Failure to Produce Public Records for Inspection)**

40. Plaintiffs reallege paragraphs 1 through 39 as if fully stated herein.

41. Defendant has failed to produce or otherwise make records available to Plaintiffs (detailed in paragraph 27, *supra*) concerning the 2012 federal general election for Florida's 18th Congressional pertaining to the accuracy and currency of official lists of eligible voters as well as the accurate tabulation of those voter's wishes, in violation of Section 8 of the NVRA, 42 U.S.C. § 1973gg-6.

42. Plaintiffs have suffered irreparable injury as a direct result of Defendant's violation of Section 8 of the NVRA.

43. Plaintiffs will continue to be injured by Defendant's violations of Section 8 of the NVRA unless and until Defendant is enjoined from continuing to violate the law by denying physical inspection and copying of the requested election records.

44. Plaintiffs have no adequate remedy at law.

## COUNT II

**(Violation of the Florida Sunshine: Failure to Produce Public Records for Inspection)**

11

45. Plaintiffs reallege paragraphs 1 through 44 as if fully stated herein.

46. Defendant has failed to produce or otherwise make records available to Plaintiffs (detailed in paragraph 27, *supra*) concerning the 2012 federal general election for Florida's 18th Congressional pertaining to the accuracy and currency of official lists of eligible voters as well as the accurate tabulation of those voter's wishes, in violation of Article I, section 24 of the Florida Constitution, and chapter 119, F.S.

47. Plaintiffs have suffered irreparable injury as a direct result of Defendant's violation of Article I, section 24 of the Florida Constitution, and chapter 119, F.S.

48. Plaintiffs will continue to be injured by Defendant's violations of Article I, section 24 of the Florida Constitution, and chapter 119, F.S., unless and until Defendant is enjoined from continuing to violate the law by denying physical inspection and copying of the requested election records.

49. Plaintiffs have no adequate remedy at law.

## COUNT III

**(Injunctive Relief Preserving Election Records under 42 U.S.C. § 1974)**

50. Plaintiffs reallege paragraphs 1 through 49 as if fully stated herein.

51. Plaintiffs seek to examine and copy election records, which must be preserved for 22 months pursuant to 42 U.S.C. § 1974. Some of these records, such as memory cartridges may be erased before this Court may issue a permanent injunction granting Plaintiff's the right to inspect such records. Other records consume extraordinary amounts of space, such as optical scan paper ballots, and thus Defendant may seek to destroy these records. Once destroyed, erased or otherwise released from the custody of the Defendant, the Plaintiffs' ancillary rights under the NVRA and Florida statutes will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs True the Vote and Pamela Wohlschlegel pray for a judgment:

A.     Declaring that Defendant is in violation of the public inspection rights of Section 8 of the NVRA and Article I, section 24 of the Florida Constitution, and chapter 119, F.S.;

B.     Enjoining the Defendant from failing or refusing to grant Plaintiffs the right to physically inspect and copy election records detailed in Paragraph 27 of this Complaint, and ordering access to the records;

C.     Granting preliminary and permanent injunctive relief ordering the Defendant to preserve and maintain election records detailed in Paragraph 27 of this complaint in accordance with 42 U.S.C. § 1974;

D.     Ordering the Defendant to pay Plaintiffs' reasonable attorney's fees, including litigation expenses and costs, pursuant to 42 U.S.C. § 1973gg-9(c); and

E.     Granting Plaintiffs further relief that this Court deems just and proper.

Dated: February 3, 2013                                    Respectfully submitted,

__S/ Michael A. Barnett_____
Michael A. Barnett
Fla. Bar No.: 40635
MICHAEL A. BARNETT, P.A.
P.O. Box 811471
Boca Raton, Florida 33481
(561) 715-7833
(561) 431-0328
michael.barnett1@gmail.com

J. Christian Adams
ELECTION LAW CENTER, PLLC.
300 N. Washington Street, Ste. 405
Alexandria, Virginia 22314
(703) 963-8611
(703) 740-1773

adams@electionlawcenter.com
(*Pro Hac Vice* Application To Be Filed)

14